SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

SEP 18 2007

J. T. NOBLIN, CLERK
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

STATE FARM FIRE AND CASUALTY                           PLAINTIFFS
COMPANY and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY

v.                                    CIVIL ACTION NO. 2:07CV188-KS-MTP

JIM HOOD, IN HIS OFFICIAL CAPACITY                      DEFENDANT
AS ATTORNEY GENERAL OF THE STATE
OF MISSISSIPPI

### FIRST AMENDED COMPLAINT

State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company ("State Farm") file this First Amended Complaint against Jim Hood, in his official capacity as Attorney General of the State of Mississippi, and allege as follows:

### NATURE OF THE ACTION

1.      This is an action to enjoin the unlawful and unconstitutional acts of Mississippi Attorney General Jim Hood ("Attorney General Hood"). Attorney General Hood has deprived State Farm and its employees of constitutional rights secured by the due process clause of the Fourteenth Amendment to the United States Constitution. Attorney General Hood also has reopened a criminal investigation of State Farm and its employees for the improper purpose of chilling State Farm and its employees in the exercise of First Amendment rights, and has engaged in violations of State Farm's rights under the Fourth Amendment to the United States Constitution.

2.      As set forth more specifically below, by serving State Farm on August 23, 2007, with a grand jury subpoena returnable to the Jackson County, Mississippi Circuit Court on September 17, 2007 ("the Fourth Grand Jury Subpoena"), Attorney General Hood has

unilaterally, and without due process, breached his January 23, 2007 agreement with State Farm to finally conclude and not reinitiate or resume his investigation into State Farm's handling of Hurricane Katrina claims, and to refrain from bringing criminal charges against State Farm or any of its current or former employees, directors, engineers, agents, counsel, or adjusters ("the January 23, 2007 Agreement"). Attorney General Hood's investigation of State Farm, as set forth in the Fourth Grand Jury Subpoena, is in violation of his January 23, 2007 Agreement with State Farm and in violation of State Farm's due process rights. Attorney General Hood's breach of the January 23, 2007 Agreement constitutes per se bad faith.

3.    As set forth more specifically below, Attorney General Hood is pursuing a criminal investigation of State Farm in bad faith and for the purpose of harassment. Attorney General Hood has reopened his criminal investigation of State Farm for at least two improper purposes. First, by reopening his criminal investigation of State Farm, Attorney General Hood seeks to chill State Farm's First Amendment right of access to the courts by attempting to coerce State Farm to settle civil litigation to which State Farm has meritorious defenses. Second, by reopening his criminal investigation of State Farm, Attorney General Hood seeks to chill State Farm's First Amendment rights of speech and association, and to coerce State Farm to participate in Attorney General Hood's attempt to chill the First Amendment right of access to courts exercised by another party, by pursuing a vindictive investigation of State Farm in retaliation for State Farm's refusal to attempt to coerce E.A. Renfroe & Company ("Renfroe") into dismissing or compromising civil litigation pending in the United States District Court for the Northern District of Alabama.

4.    As set forth more specifically below, Attorney General Hood has also violated State Farm's Fourth Amendment right to be free from unreasonable searches and seizures.

Attorney General Hood's confidential informants and other agents have searched and seized State Farm property without first obtaining a search warrant or otherwise lawfully gaining access to the information. Additionally, the Fourth Grand Jury Subpoena was served by Attorney General Hood for improper purposes in breach of the January 23, 2007 Agreement, in violation of State Farm's due process rights, and is thus unconstitutionally unreasonable in violation of State Farm's Fourteenth Amendment rights.

## PARTIES

5.     State Farm Mutual Automobile Insurance Company is a mutual insurance company, organized and existing under the insurance laws of the State of Illinois, and has its principal place of business in Illinois. State Farm Fire and Casualty Company is a stock insurance company organized and existing under the insurance laws of the State of Illinois, is a wholly owned subsidiary of State Farm Mutual Automobile Insurance Company, and has its principal place of business in Illinois. Plaintiffs are jointly referred to as "State Farm."

6.     The Fourth Grand Jury Subpoena was served on State Farm Fire and Casualty Company. However, the January 23, 2007 Agreement that is the subject of this lawsuit also provides that Attorney General Hood will not further investigate or prosecute State Farm Mutual Automobile Insurance Company, thus making it a proper Plaintiff to this action.

7.     Attorney General Hood is the Attorney General of the State of Mississippi.

8.     Attorney General Hood is sued in his official capacity.

## JURISDICTION

### Subject Matter

9.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331, as the matters at issue arise under the Constitution and laws of the United States of America. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(3).

3

10.    This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

*In Personam*

11.    This Court has *in personam* jurisdiction over Attorney General Hood.

## VENUE

12.    Venue is proper pursuant to 28 U.S.C. § 1391(b) in the Southern District of Mississippi.

### FACTS RELATED TO ATTORNEY GENERAL HOOD'S DUE PROCESS VIOLATIONS ARISING FROM HIS BAD FAITH INVESTIGATION OF STATE FARM IN VIOLATION OF THE JANUARY 23, 2007 AGREEMENT

13.    On March 16, 2006, Attorney General Hood's office caused to be issued a grand jury subpoena on State Farm in connection with a criminal investigation which, according to statements attributed to Attorney General Hood in the news media, centered on State Farm's claims-handling practices following Hurricane Katrina. A true and correct copy of the March 16, 2006, subpoena is attached hereto as Exhibit A.

14.    State Farm fully cooperated with Attorney General Hood's investigation and produced hundreds of thousands of pages of documents in response to the subpoena.

15.    Later, on December 14 and 18, 2006, Attorney General Hood caused to be issued two more Mississippi grand jury subpoena duces tecum on State Farm seeking additional documents. True and correct copies of the December 14 and 18, 2006, subpoenas are attached hereto as Exhibits B and C.

16.    In further cooperation with the investigation, in January 2007, employees of State Farm agreed to accept grand jury subpoenas and testify before the Jackson County grand jury and to answer the questions of at least three different officials from Attorney General Hood's office.

4

17.    On or about January 23, 2007, State Farm and Attorney General Hood reached an agreement whereby Attorney General Hood concluded his criminal investigation into State Farm's handling of Hurricane Katrina claims.

18.    The agreement to conclude Attorney General Hood's criminal investigation of State Farm's handling of Hurricane Katrina claims was memorialized in a letter dated January 23, 2007, from Attorney General Hood to State Farm's attorneys.  A true and correct copy of the January 23, 2007 Agreement is reproduced below and is attached hereto as Exhibit D.

**STATE OF MISSISSIPPI**



**JIM HOOD**
ATTORNEY GENERAL

January 23, 2007

James Tucker, Esq.
Butler Snow O'Mara Stevens & Cannada
210 E Capitol Street Suite 1700
Jackson, MS 39225
HAND DELIVERY

Dear Mr. Tucker:

Pursuant to the settlement of this case, I hereby agree as follows:

In light of the cooperation by State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company (jointly, "State Farm") in the criminal investigation being conducted by the Mississippi Attorney General's Office into State Farm's handling of Hurricane Katrina claims (hereinafter "Investigation"), and based on the facts developed and State Farm's willingness to enter into a settlement agreement requiring them to pay a substantial penalty to the victims, the Mississippi Attorney General and the State of Mississippi (a) will conclude the investigation as to State Farm, any of its current or former employees, directors engineers, agents, counsel or adjusters, and (b) will not bring criminal charges against State Farm or any of its current or former employees, directors, engineers, agents, counsel or adjusters in connection with the Investigation.

State Farm will pay costs of investigation as agreed to in the Settlement Agreement.  All outstanding grand jury subpoenas issued from the Attorney General of Mississippi's Office to State Farm or its current or former employees, engineers, agents or adjusters are deemed withdrawn. State Farm may inform the recipients of these grand jury subpoenas that they need take no further action or appear as otherwise stated therein.

If you have any questions, please contact me.

Sincerely yours,

Jim Hood
Attorney General

CARROLL GARTIN JUSTICE BUILDING  •  POST OFFICE BOX 220  •  JACKSON, MISSISSIPPI 39205-0220
TELEPHONE (601) 359-3680  •  TELEFAX (601) 359-3441

19.    Accordingly, pursuant to the January 23, 2007 Agreement, Attorney General Hood agreed to end his criminal investigation of State Farm and further agreed not to bring criminal charges against State Farm or its employees, directors, engineers, agents, counsel or adjusters.

20.    A press release issued on January 23, 2007, by the Attorney General's Office stated that "[t]he criminal investigation of State Farm's claims handling practices is now complete. 'Although their activities warranted criminal investigation, our career prosecutors found that the matter would be better handled in civil court and in the United States Congress,' said Attorney General Hood." A true and correct copy of Attorney General Hood's press release is attached hereto as Exhibit E.

21.    The January 23, 2007 Agreement concluding Attorney General Hood's criminal investigation of State Farm's handling of Hurricane Katrina claims is a valid and enforceable contract between Attorney General Hood and State Farm.

22.    In reliance upon the representations and agreements by Attorney General Hood in the January 23, 2007 Agreement concluding the criminal investigation, State Farm paid to Attorney General Hood's office, in consideration for the January 23, 2007 Agreement, the sum of $5,000,000.00 which he demanded and accepted to cover the costs of his office's criminal investigation.

23.    State Farm has learned recently that Attorney General Hood wrote a letter dated July 16, 2007 to federal law enforcement officials in Alabama stating that he is engaged in "an ongoing investigation into what [Attorney General Hood] believes is State Farm's fraudulent conduct, not only toward their own policyholders, but also against the National Flood

6

Insurance Program as well. Our investigation continues . . . ." A true and correct copy of Attorney General Hood's July 16, 2007 letter is attached hereto as Exhibit G.

24.    Attorney General Hood's July 16, 2007, letter to federal law enforcement officials in Alabama, demonstrates his bad faith: he has reinstituted an investigation of State Farm's handling of Hurricane Katrina claims notwithstanding his unequivocal affirmation in the January 23, 2007 Agreement that the investigation was concluded and no criminal charges would be brought.

25.    On August 23, 2007, Attorney General Hood served the Fourth Grand Jury Subpoena on State Farm evidencing bad faith again by the reopening or reinstitution of his criminal investigation of State Farm's claims-handling practices following Hurricane Katrina. Much of the information being requested has been provided previously by State Farm, in varying forms, to the federal authorities in response to a federal investigation and requests for information. A true and correct copy of the Fourth Grand Jury Subpoena is attached hereto as Exhibit F.

26.    Specifically, the Fourth Grand Jury Subpoena seeks a wide array of documents from State Farm concerning State Farm's handling of Hurricane Katrina claims; precisely the same matters that Attorney General Hood agreed would not be investigated or prosecuted pursuant to his January 23, 2007 Agreement with State Farm.

27.    Attorney General Hood's past and continuing acts, omissions, and bad faith conduct have proximately caused and are causing State Farm to suffer irreparable harm.

## FACTS RELATED TO ATTORNEY GENERAL HOOD'S EFFORTS TO
## CHILL THE FIRST AMENDMENT RIGHTS OF STATE FARM

*Attorney General Hood's Attempts to Coerce State Farm to Settle Civil Lawsuits*

28.    On September 15, 2005, shortly after Hurricane Katrina made landfall on the Mississippi Gulf Coast, Attorney General Hood filed a civil action against State Farm seeking, among other things, to invalidate certain provisions of State Farm's homeowners policies in the State of Mississippi.

29.    After Attorney General Hood's filing of his lawsuit, Attorney Richard F. Scruggs ("Scruggs") and other lawyers in combination with Scruggs and his law firm, known collectively as the Scruggs Katrina Group ("SKG"), filed a large number of civil actions against State Farm challenging a variety of provisions contained in State Farm's homeowners policies, including some of the same provisions challenged by Attorney General Hood.

30.    State Farm asserted and has continued to assert meritorious defenses to the civil actions filed by Attorney General Hood and SKG.

31.    At some time prior to March 2006, Attorney General Hood initiated a criminal investigation of State Farm's handling of Hurricane Katrina claims.  Attorney General Hood has utilized and is continuing to utilize his criminal investigation of State Farm to coerce State Farm to compromise or give up its meritorious defenses to the civil actions filed by Attorney General Hood and SKG.

32.    Similarly, on January 18, 2007, an agent of SKG wrote a letter to State Farm counsel stating that going forward with a proposed State Farm - SKG civil settlement "vastly reduces the chance that Hood would go forward with an indictment" and that "[i]t may well be that Hood has become wary of ethics issues and has decided he has to put some distance

between the civil litigation and the criminal investigation." *See* January 18, 2007 letter by Don Barrett, attached hereto as Exhibit H.

33.    In the context of an argument over how attorneys' fees from a planned SKG settlement with State Farm should be divided among various SKG member law firms, a member of Scruggs' law firm asserted that Scruggs' law firm deserved a larger piece of the pie because "the whistleblowers came to Dick and they were the sole basis for Hood's interest which was really the 80% of why State Farm wanted to settle . . . ." See January 25, 2007 e-mail from S. Backstrom, attached hereto as Exhibit I.

34.    Further, former Mississippi Attorney General Mike Moore ("Moore"), acting as an agent of Attorney General Hood, was involved in compiling information from State Farm for use by Attorney General Hood in his criminal investigation of State Farm.  Thereafter, Moore appeared as counsel with SKG in civil lawsuits against State Farm.  *See* Notice of Appearance filed by Mike Moore in *Woullard* and *McIntosh,* attached hereto as Exhibits J & K.

35.    Attorney General Hood knew or should have known that Moore's activities in both the criminal investigation of State Farm and as a private attorney for policyholders suing State Farm is improper.  Among other reasons, on March 29, 2006, the Circuit Court of Harrison County, Mississippi entered a protective order requiring Attorney General Hood to erect and maintain a "Chinese wall" separating the criminal investigation from civil litigation against State Farm and prohibiting the disclosure of materials obtained by Attorney General Hood in the criminal investigation to persons in the Attorney General's office involved in pursuing civil litigation against State Farm.  *See* March 29, 2006 Order attached hereto as Exhibit L.

36.    On numerous occasions, Scruggs has publicly acknowledged his complicity with Attorney General Hood in exerting pressure on State Farm, through Attorney General Hood's criminal investigation of State Farm and its employees, to benefit Scruggs in civil litigation against State Farm.  For example, on February 28, 2007, Scruggs boasted of using "every trick in the book, political, public opinion and legal," to force State Farm into resolving civil cases in which Scruggs represents State Farm policyholders.  During this same hearing, Moore also linked the settlement to "the efforts of the Attorney General."  *See* Excerpts from Transcript of 2/28/07 Hearing in *Dennis Woullard v. State Farm Fire & Casualty Company*, In the United States District Court for the Southern District of Mississippi, Civil Action No. 1:06CV1057-LTS-RHW, at page 10, 27, attached hereto as Exhibit M.

37.    On August 23, 2007, the same day that Attorney General Hood served State Farm with the Fourth Grand Jury Subpoena, an agent of SKG sent a letter to one of State Farm's attorneys stating that "[i]f State Farm or any of its employees are indicted, then the value of our cases skyrocket."  *See* August 23, 2007 letter from Don Barrett, attached hereto as Exhibit N. Significantly, Moore, who previously acted as an agent of Attorney General Hood in connection with his criminal investigation, is now affiliated with SKG in the civil actions SKG is attempting to settle through the threat of criminal indictment.

38.    By these and other similar acts, Attorney General Hood, directly and through those acting in concert with him, has attempted and is continuing to attempt to coerce State Farm to settle civil litigation to which State Farm has meritorious defenses, and thereby limit State Farm's access to the courts, in violation of the First Amendment.

*Attorney General Hood's Attempts to Coerce State Farm to Attempt to Interfere with the Renfroe Litigation*

39.    Attorney General Hood is also using the criminal investigative process to retaliate against State Farm for its refusal to attempt to coerce Renfroe in litigation between E.A. Renfroe & Company and two SKG agents, Cori and Kerri Rigsby ("the Rigsby Sisters"), and State Farm's refusal to coerce Renfroe into dismissing such action, in violation of Renfroe's First Amendment right of access to the courts. *See E. A. Renfroe & Company, Inc. v. Cori Rigsby Moran and Kerri Rigsby*; Civil Action No. 06-AR-1752-S (N.D. Ala.) (the "Renfroe Litigation").

40.    Among other things, on June 15, 2007, the United States District Court for the Northern District of Alabama made findings in the Renfroe Litigation that Attorney General Hood and Scruggs conspired to withhold documents purloined by the Rigsby Sisters from State Farm in violation of a preliminary injunction entered by that Court.   Specifically, Attorney General Hood and Scruggs entered into an agreement to subvert the injunction whereby Scruggs gave the purloined documents to Attorney General Hood in violation of the preliminary injunction entered by the Court.

41.    The Court opined that "even if Renfroe's counsel had promptly disclosed the documents to State Farm, the court does not understand how this would have jeopardized a criminal investigation of State Farm (as Attorney General Hood asserted). Unless, as Renfroe has hinted at, Scruggs and Hood had teamed up to bully State Farm into civil and criminal settlements by telling State Farm that they had 15,000 inculpatory documents but not allowing State Farm to see them, the court does not see why it was worth it to Scruggs to risk contempt. The database from which the documents were printed was still in the possession of Renfroe

and/or State Farm." *See* Order of June 15, 2007 in the Renfroe Litigation, attached hereto as Exhibit O.

42.    Attorney General Hood has made it clear that he is angered by the Renfroe Litigation and will hold State Farm accountable for circumstances in that litigation with which he is displeased.

43.    For example, while acting as Attorney General Hood's agent, Moore told State Farm: "[C]an we get renfroe [sic] settled, its [sic] holding up progress on my end . . . ." *See* February 6, 2007 email from Mike Moore, attached hereto as Exhibit P.

44.    Two days later, Attorney General Hood's agent, Moore, communicated the following to State Farm:  "I am told that the Renfroe lawyers made unreasonable demands for resolving the issues on the Rigsby sisters issue today . . . . I am going to wait til [sic] tomorrow to report to the Attorney General what they are up to because the response will not be pretty." *See* February 8, 2007 email from Mike Moore, attached hereto as Exhibit Q.

45.    On February 19, 2007, less than two weeks after these statements by Moore, Scruggs told State Farm that its "lack of resolve in securing dismissal of the Renfroe matter" will not be "without consequences."  *See* February 19, 2007 letter from Scruggs, attached hereto as Exhibit R.

46.    As recently as July 16, 2007, Attorney General Hood stated in a letter to federal law enforcement officials in Alabama that "[w]e view State Farm and Renfroe as potential co-conspirators." *See* Exhibit G hereto.  By such letter, Attorney General Hood was interceding on Scruggs' behalf in an attempt to prevent prosecution of Scruggs for criminal contempt.  A week before Attorney General Hood's letter, his re-election campaign received a $33,000.00

contribution from Scruggs. *See* July 10, 2007 Candidate Report of 2007 Receipts and Distributions, attached hereto as Exhibit U.

47.    Notwithstanding Attorney General Hood's efforts on behalf of Scruggs, on July 26, 2007, the United States District Court for the Northern District of Alabama appointed special prosecutors to prosecute the charge of criminal contempt against Scruggs. *See* July 26, 2007 Order, attached hereto as Exhibit T.

48.    Even more recently, an SKG agent, in his letter seeking settlement with State Farm by making threats of criminal indictment, stated, "All of this happened because State Farm could not or would not call off its Renfroe dogs in Alabama." *See* Exhibit N. As noted above, State Farm's counsel received this letter on the same day that Attorney General Hood served State Farm with the Fourth Grand Jury Subpoena.

49.    Attorney General Hood's resumption of the criminal investigation against State Farm is in direct retaliation against State Farm for its refusal to attempt to induce Renfroe to dismiss its civil action in violation of Renfroe's First Amendment right of access to the courts. By these and other similar acts, Attorney General Hood seeks to chill State Farm's First Amendment rights of speech and association by pursuing a vindictive and retaliatory investigation of State Farm.

## FACTS RELATED TO ATTORNEY GENERAL HOOD'S VIOLATION OF STATE FARM'S FOURTH AMENDMENT RIGHTS

50. On information and belief, around December 2005, either directly or acting through Scruggs, Attorney General Hood obtained confidential information concerning State Farm policyholders from the Rigsby Sisters (who are now each paid $150,000.00 per year to act as "consultants" to Scruggs).

51. On March 17, 2006, Scruggs was quoted by the Associated Press stating that he had access to "a highly placed insider" at a major insurance company. On March 28, 2006, a representative of Attorney General Hood stated at a hearing on a motion for a protective order, in connection with one of the earlier subpoenas to State Farm, that Attorney General Hood had received information from "confidential informants" regarding engineering reports and State Farm. Excerpts from Transcript of March 28, 2006 Hearing in *In re: Grand Jury Subpoena Dueces Tecum Served on Rick Moore*; In the Circuit Court of Harrison County, Second Judicial District, Cause No. A2402-06-89 at pp. 12-13, attached hereto as Exhibit V.

52. On March 30, 2006, Attorney General Hood and Scruggs provided interviews to local media on the subject of State Farm and engineering reports. On April 5, 2006, Attorney General Hood was quoted by Bloomberg News as stating that Scruggs was helping Attorney General Hood gather documents and witnesses.

53. Accordingly, beginning as early as December 2005, and continuing thereafter, Scruggs and the Rigsby Sisters were acting as agents of Attorney General Hood in connection with the illegal collection of State Farm documents.

54. As agents for Attorney General Hood and Scruggs, the Rigsby Sisters obtained the confidential policyholder information both by copying and accessing State Farm computers and databases. For example, between February 2006 and June 2006, the Rigsby Sisters forwarded State Farm documents from State Farm laptop computers to their personal e-mail

accounts. In June 2006, the Rigsby Sisters accessed State Farm's electronic records and printed out thousands of documents that they assembled into nine or ten boxes, and delivered one set of the illegally obtained documents to Attorney General Hood.

55.    The Rigsby Sisters continued to provide Attorney General Hood with purloined State Farm documents through June 2006 and, on at least one occasion, state agents acting for and on behalf of Attorney General Hood traveled to the residence of one of the Rigsby Sisters to take delivery of a large quantity of State Farm documents.

56.    Attorney General Hood's use of the Rigsby Sisters to conduct warrantless searches and seizures of State Farm property for Attorney General Hood for the criminal investigation of State Farm is even more egregious when viewed in light of the fact that, at the same time they were acting for Attorney General Hood, the Rigsby Sisters conducted what amounted to civil discovery for Scruggs and SKG.

57.    For example, a comparison between a list of State Farm claim files that Keri Rigsby accessed in June 2006 and a list of clients that Scruggs was representing in the case of *McFarland v. State Farm Fire and Casualty Company*, No. 1:06CV466-LTS-RHW (S.D. Miss. filed May 9, 2006), reveals that, of the first 118 claim files Kerri Rigsby accessed, 99 matched up name for name and in substantially the same sequence as the names of plaintiffs listed on an exhibit to the *McFarland* complaint.

58.    The Rigsby Sisters' activities on behalf of Attorney General Hood and Scruggs were conducted secretly and without benefit of notice to State Farm or constitutionally required search warrants or other legal process.

59.    The fruits of the unconstitutional and otherwise unlawful searches and seizures of State Farm property formed the core of Attorney General Hood's criminal investigation of

15

State Farm's claims-handling practices following Hurricane Katrina and also formed the core of Scruggs' investigation and prosecution of civil actions on behalf of State Farm policyholders.

60.    In fact, in a hearing before the Circuit Court of Harrison County, Mississippi, on April 11, 2006, in regard to the first grand jury subpoena served by Attorney General Hood, Attorney General Hood boasted that he already had many of State Farm's documents and just wanted to see if State Farm would turn them over to him, confirming that Scruggs and the Rigsby Sisters were already collaborating with General Hood.  Specifically, General Hood stated in open court:  "We know what a lot of it that they're going to produce and we're just going to see if they actually give us what is written on them and stuck to them and so forth. So I've had this for a long time, this information for a good while and there's nothing in that civil case that I can do." *See* Excerpts from Transcript of 4/11/06 Hearing in *In re:  Grand Jury Subpoena Duces Tecum Served on Rick Moore*; In the Circuit Court of Harrison County, Mississippi, Second Judicial District, Cause No. A2402-06-89 at p. 51, attached hereto as Exhibit S.

61.    On information and belief, the Fourth Grand Jury Subpoena is a pretext for Attorney General Hood to improperly procure documents for Scruggs and his law firm to use in civil litigation against State Farm as well as for Scruggs' use and the use of the Rigsby Sisters in the Renfroe Litigation, including the related criminal contempt prosecution of Scruggs.

62.    Further, upon information and belief, the information demanded in the Fourth Grand Jury Subpoena was the subject of oral production requests made to the Mississippi Department of Insurance ("MDOI") by Scruggs' law firm, and a similar oral request made by

Attorney General Hood to MDOI.  MDOI denied both requests as improper under applicable law.

63.    The Fourth Grand Jury Subpoena was served by Attorney General Hood for improper purposes in breach of the January 23, 2007 Agreement, in violation of State Farm's due process rights, and is thus unconstitutionally unreasonable in violation of State Farm's due process rights.

64.    By these and other similar acts, Attorney General Hood has violated State Farm's Fourth Amendment right to be free from unreasonable searches and seizures.

## CLAIMS

65.    State Farm presently seeks against Attorney General Hood only prospective equitable relief in this Action, including specific performance, declaratory relief, and injunctive relief.

## COUNT I

*Declaratory Judgment as to Attorney General Hood's Breach of the
January 23, 2007 Agreement with State Farm*

66.    State Farm incorporates and adopts by reference the preceding averments of this First Amended Complaint.

67.    As alleged above, State Farm is entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 & 2202, in that there is an actual and immediate controversy now existing between State Farm and Attorney General Hood as to which State Farm seeks the judgment of this Court.

68.    As alleged above, State Farm is entitled to a declaratory judgment that Attorney General Hood's service of the Fourth Grand Jury Subpoena constitutes a material breach of the January 23, 2007 Agreement.

## COUNT II

*Specific Performance by Attorney General Hood of the*
*January 23, 2007 Agreement with State Farm*

69.    State Farm incorporates and adopts by reference the preceding averments of this

First Amended Complaint.

70.    The acts and omissions of Attorney General Hood as alleged above constitute

material uncured breaches of contract.

71.    The acts of Attorney General Hood as alleged above have caused and are causing

State Farm and its employees consequent, proximate and irreparable injury.

72.    Specific performance is required because Attorney General Hood's breach of the

January 23, 2007 Agreement cannot be remedied through any alternative means.

73.    Accordingly, State Farm is entitled to an order or injunction of specific

performance, directing Attorney General Hood to specifically perform all provisions of his

January 23, 2007 Agreement with State Farm, including, but not limited to refraining from:  (a)

seeking State Farm's compliance with the Fourth Grand Jury Subpoena; (b) reopening,

reinstituting or further conducting any criminal investigation(s) of State Farm's handling of

Hurricane Katrina claims; and (c) bringing criminal charges against State Farm or any of its

current or former employees, directors, engineers, agents, counsel or adjusters concerning the

handling of Hurricane Katrina claims.

## COUNT III

*Due Process Violations Related to Attorney General Hood's*
*Breach of the January 23, 2007 Agreement with State Farm Actionable*
*Under 42 U.S.C. § 1983*

18

74.   State Farm incorporates and adopts by reference the preceding averments of this First Amended Complaint.

75.   As alleged above, acting under color of state law, Attorney General Hood has unilaterally and without due process, as required by the Fourteenth Amendment of the United States Constitution, breached the January 23, 2007 Agreement with State Farm.

76.   State Farm has performed all of its obligations under the January 23, 2007 Agreement with Attorney General Hood, and State Farm has relied to its detriment on that agreement.

77.   At no time prior to Attorney General Hood's service of the Fourth Grand Jury Subpoena in violation of the January 23, 2007 Agreement did Attorney General Hood obtain a final judgment from a court of competent jurisdiction adjudicating that State Farm has materially breached the January 23, 2007 Agreement.

78.   Attorney General Hood's service of the Fourth Grand Jury Subpoena in breach or rescission of the January 23, 2007 Agreement violates State Farm's rights to due process under the Fourteenth Amendment to the United States Constitution, and his conduct is actionable under 42 U.S.C. § 1983.

79.   The unconstitutional and unlawful acts of Attorney General Hood as alleg ed above have caused and are causing State Farm and its employees consequent and proximate injury, and other irreparable harm.

80.   Accordingly, State Farm is entitled to an order or injunction of specific performance, directing Attorney General Hood to specifically perform all provisions of the January 23, 2007 Agreement with State Farm and including, but not limited to refraining from: (a) seeking State Farm's compliance with the Fourth Grand Jury Subpoena; (b) reopening,

reinstituting or further conducting any criminal investigation(s) of State Farm's handling of Hurricane Katrina claims; and (c) bringing criminal charges against State Farm or any of its current or former employees, directors, engineers, agents, counsel or adjusters concerning the handling of Hurricane Katrina claims.

## COUNT IV

*Attorney General Hood's Violation of State Farm's First Amendment Rights*

81.    State Farm incorporates and adopts by reference the preceding averments contained in this First Amended Complaint.

82.    Attorney General Hood, acting under color of state law, served the Fourth Grand Jury Subpoena to punish State Farm for defending the civil lawsuits brought against it by Attorney General Hood and Scruggs.  These adverse and retaliatory actions violate State Farm's First Amendment right to access the courts and to petition the government for redress of grievances.

83.    State Farm has valid and meritorious defenses to the civil lawsuits brought by Attorney General Hood and Scruggs, and Attorney General Hood's actions seek to deprive State Farm of its First Amendment right to litigate these defenses.

84.    Additionally, as described above, Attorney General Hood seeks to chill State Farm's First Amendment rights of free speech and association by pursuing a vindictive investigation of State Farm in retaliation for State Farm's refusal to coerce E.A. Renfroe & Company into dismissing or compromising the Renfroe Litigation in violation of Renfroe's First Amendment right of access to the courts.

85.    State Farm has suffered and will continue to suffer proximate injury due to Attorney General Hood's retaliation against State Farm for its exercise of its rights protected by the First Amendment.

### COUNT V

*Attorney General Hood's Violation of State Farm's Fourth Amendment Rights*

86.    State Farm incorporates and adopts by reference the preceding averments contained in this First Amended Complaint.

87.    Attorney General Hood, acting under color of state law, has also violated State Farm's Fourth Amendment right to be free from unreasonable searches and seizures.    As described above, Attorney General Hood, through Scruggs and the Rigsby Sisters, took property belonging to State Farm without any due process, and without first obtaining a search warrant. Such property includes confidential documents and other information concerning State Farm's handling of Hurricane Katrina claims.

88.    As alleged above, Attorney General Hood's service of the Fourth Grand Jury Subpoena is also a pretextual effort to obtain documents for an improper purpose and a misuse of the grand jury proceedings -- to obtain documents for Attorney General Hood's and Scruggs' use in civil litigation, and for Scruggs' use in defending the criminal charges brought against Scruggs and his law firm in the Renfroe Litigation.

89.    The Fourth Grand Jury Subpoena was served by Attorney General Hood for improper purposes in breach of the January 23, 2007 Agreement, in violation of State Farm's due process rights, and is thus unconstitutionally unreasonable in violation of State Farm's due process rights.

90.     Attorney General Hood's improper uses of the grand jury process, including service of the Fourth Grand Jury Subpoena, violates State Farm's Fourth Amendment rights.

91.     State Farm has suffered and will continue to suffer proximate injury due to General Hood's unlawful searches and seizures in violation of State Farm's Fourth Amendment rights.

## COUNT VI

*Conspiracy to Deprive State Farm of its Constitutional Rights*
*in Violation of 42 U.S.C. § 1985(2)*

92.     State Farm incorporates and adopts by reference the preceding averments contained in this First Amended Complaint.

93.     Attorney General Hood, acting in concert with Scruggs and the Rigsby Sisters as described above, has conspired to deprive State Farm of its First, Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1985(2).

94.     At the latest, by June 2006 when the Rigsby Sisters unlawfully seized State Farm documents and other property, they did so as part of an agreement with Attorney General Hood and Scruggs to provide this information in order to exact settlements from State Farm in favor of Attorney General Hood and Scruggs.   Attorney General Hood performed his part of this agreement by pursuing the criminal investigation, serving the Fourth Grand Jury Subpoena, and breaching the January 23, 2007 Agreement without due process.

95.     State Farm has been and continues to be proximately injured by this unlawful conspiracy to deprive State Farm of its First, Fourth and Fourteenth Amendment rights.

## COUNT VII

*Costs, Expenses of Litigation and Reasonable Attorneys' Fees Under 42 U.S.C. § 1988*

96.    State Farm incorporates and adopts by reference the preceding averments of this First Amended Complaint.

97.    Pursuant to 42 U.S.C. § 1988, State Farm is entitled to recover its reasonable expenses, attorneys' fees and costs of litigation incurred in this action brought under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, based upon the above, State Farm requests that this Court grant it the following relief:

(1)    A declaratory judgment under 28 U.S.C. §§ 2201 & 2202 that Attorney General Hood is bound to perform his obligations under the January 23, 2007 Agreement with State Farm wherein he agreed to finally conclude and not reinstitute or resume his criminal investigation of State Farm's handling of Hurricane Katrina claims and to not bring criminal charges against State Farm or any of its current or former employees, directors, engineers, agents, counsel or adjusters concerning the handling of Hurricane Katrina claims;

(2)    A declaratory judgment under 28 U.S.C. §§ 2201 & 2202 that Attorney General Hood is in breach of his obligations under the January 23, 2007 Agreement with State Farm by his criminal investigation of State Farm's handling of Hurricane Katrina claims and pursuing criminal charges against State Farm and/or its current or former employees, directors, engineers, agents, counsel or adjusters concerning the handling of Hurricane Katrina claims;

(3)    A temporary restraining order, preliminary injunction, permanent injunction and final judgment of specific performance, pursuant to 28 U.S.C. §§ 1651 & 2283, as well as 42 U.S.C. §§ 1983 & 1985(2) and other law, directing Attorney General Hood to specifically perform all provisions of his January 23, 2007 Agreement with State Farm, including, but not limited to refraining from:  (a) seeking State Farm's compliance with the Fourth Grand Jury Subpoena; (b) reopening, reinstituting or further conducting any criminal investigation(s) of State Farm's handling of Hurricane Katrina claims; and (c) bringing criminal charges against State Farm or any of its current or former employees, directors, engineers, agents, counsel or adjusters concerning the handling of Hurricane Katrina claims.

(4)    An award of costs, expenses of litigation and reasonable attorneys' fees as provided by 42 U.S.C. § 1988; and

(5)    Such further, supplemental, alternative, different or additional equitable relief as may be appropriate under the premises.

Respectfully submitted, this _18_ day of September, 2007.

STATE FARM FIRE AND CASUALTY COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiffs

BY:    _____
       Robert C. Galloway, MB No. 4388
       Jeffrey A. Walker, MB No. 6879

ATTORNEYS FOR STATE FARM FIRE AND CASUALTY COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

OF COUNSEL:

ROBERT C. GALLOWAY, MB No. 4388
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
P. O. DRAWER 4248
GULFPORT, MS 39502
T:    (228) 575-3019
F:    (228) 868-1531
E-MAIL: bob.galloway@butlersnow.com

JEFFREY A. WALKER, MB No. 6879
BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
210 E. Capitol Street, Suite 1700 (39201)
P.O. Box 22567
JACKSON, MS 39225-2567
T:    (601) 985-4558
F:    (601) 985-4500
E-MAIL: jeff.walker@butlersnow.com

## CERTIFICATE OF SERVICE

I, Robert C. Galloway, one of the attorneys for Plaintiffs, do hereby certify that I have this day caused a true and correct copy of the foregoing instrument to be delivered to the following, via the means indicated below:

**Via ~~U.S. Mail~~ & E-mail** *Hand delivery*

Harold E. Pizzetta
Mary Jo Woods
Office of the Attorney General
Walter Sillers Building
550 High Street, Suite 1200
Jackson, Mississippi 39201

ATTORNEYS FOR DEFENDANT

THIS the _18_ day of September, 2007.

_____
Robert C. Galloway, MB No. 4388

Jackson 2335916v.3