IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

STATE FARM FIRE AND CASUALTY
COMPANY and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY                             PLAINTIFFS

VS.                              CIVIL ACTION NO. 2:07-cv-188(DCB)(MTP)

JIM HOOD, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL
OF THE STATE OF MISSISSIPPI                               DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the Court on Jackson New Media, Inc. ("New Media")'s motion for leave to intervene in this action for purposes of seeking an order allowing the unsealing of certain court documents, or alternatively, for an order requiring the original parties to appear and show cause why the settlement agreement should not be unsealed **(docket entry 110)**. Having carefully considered the motion and responses, and being fully advised in the premises, the Court finds as follows:

New Media's motion[1] seeks leave to intervene under Fed.R.Civ.P. 24(a)(2) or, in the alternative, Fed.R.Civ.P. 24(b)(1)(B). Rule 24(a)(2) provides:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:
> ...
> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as

---

[1] The motion is joined in by WDAM, LLC ("WDAM"); WLBT, LLC ("WLBT"); and WLOX, LLC ("WLOX").

> a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed.R.Civ.P. 24(a)(2). In addition, Rule 24(c) provides:

> **(c) Notice and Pleading Required.** A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

Fed.R.Civ.P. 24(c).

New Media is a Mississippi corporation with its principal place of business in the Southern District of Mississippi, primarily engaged in operating an interactive on-line news service, "YallPolitics.com," and in the business of gathering, reporting, analyzing and commenting upon legal and political news generated in and about the state of Mississippi.[2] The three joining entities are television stations operating in the Southern District of Mississippi, and in the business of television news gathering and reporting.[3]

The movants seek intervention "for purposes of seeking an order allowing the unsealing of certain court documents," namely, "the settlement agreement" between the parties to this action.[4] They assert that their motion is timely, that they have an interest

---

[2] New Media's Motion, ¶ 1; Affidavit of Alan Lange, ¶¶ 3-4.

[3] Joinder of WDAM, p. 1; Joinder of WLBT, p. 1; Joinder of WLOX, p. 1.

[4] New Media's Motion, p. 1, p. 2 ¶ 3.

in the transaction that is the subject of this action, and that final disposition of this matter without the granting of the relief sought would adversely affect their practical ability to protect their First Amendment (to the United States Constitution) and Section 13 (under the Mississippi Constitution of 1890) rights of news gathering and reporting, as well as the corollary rights of their respective readerships and audiences to be informed of matters of significant public concern.[5]

In order to intervene as of right under Rule 24(a)(2), the movants must make a satisfactory showing that each of the following requirements are met:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

<u>Taylor Communications Group, Inc. v. Southwestern Bell Tel. Co.</u>, 172 F.3d 385, 387 (5th Cir. 1999).

Under the timeliness requirement, four factors should be considered:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; ... (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply

---

[5] New Media's Motion, ¶ 2.

for intervention as soon as it knew or reasonably should have known of its interest in the case; ... (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; ... [and] (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

Stallworth v. Monsanto Co., 558 F.2d 257, 264-66 (5th Cir. 1977).

As to timeliness, the movants allege:

> This Court's Judgment of Dismissal, which had the concomitant effect of sealing the settlement agreement between State Farm and Attorney General Hood, was entered barely over a year ago. New Media's - and the public's - First Amendment and open access interests at risk in this case, and the jurisprudence of the timeliness issue in the Fifth Circuit, together call strongly for the conclusion that this motion to intervene is timely filed.
> . . .
> No one would be hurt by allowing New Media to intervene in this matter for purposes of seeking limited but substantive relief. And greater justice certainly would be attained by allowing the sun to shine in on a deal in which the public is intimately interested, but about which the public knows not the first detail.[6]

In response, the defendant, Attorney General Hood, asserts that the motion is untimely.[7] In support, he cites Houston General Ins. Co. v. Moore, 193 F.3d 838 (4th Cir. 1999), in which the Fourth Circuit, addressing the "cardinal consideration" of timeliness, found:

> Beaumont filed its motion to intervene on April 17, 1997, more than two months after the district court entered the Final Order of Judgment for plaintiffs on February 16, 1997. Pursuant to 28 U.S.C. § 1291 and Fed.R.App.P. 4, the time for appeal had expired by this

---

[6] New Media's Memorandum, p. 4.

[7] Defendant's Response, ¶¶ 1-2. The plaintiffs have also filed a response, but their response does not address the timeliness of the motion.

4

> date. Although entry of final judgment is not an absolute bar to filing a motion to intervene, the authorities note that: "There is considerable reluctance on the part of the courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure: Civil 2d</u> § 1916, at 444-45 (West 1986)(footnotes omitted).

<u>Id</u>. at 840 (footnote omitted).

The defendant asserts that Fifth Circuit precedent supports a finding that New Media's motion is untimely,[8] citing <u>Non Commissioned Officers Ass'n of U.S. v. Army Times Pub. Co.</u>, 637 F.2d 372, 373 (5th Cir. 1981)("A prerequisite of an intervention (which is an ancillary proceeding in an already instituted suit) is an existing suit within the Court's jurisdiction."), <u>opinion modified and reinstated</u>, 650 F.2d 83 (5th Cir. 1981); and <u>Krim v. pcOrder.com, Inc.</u>, 402 F.3d 489, 502 (5th Cir. 2005)(a "prerequisite of an intervention" is "an existing suit within the Court's jurisdiction").

The defendant also relies on <u>Ericsson, Inc. v. Interdigital Communications Corp.</u>, 418 F.3d 1217 (Fed. Cir. 2005), decided under regional Fifth Circuit law. In that case, the underlying action was dismissed on March 19, 2003, and the motion seeking intervention was filed in December of 2003. The district court granted intervention. The Federal Circuit reversed, finding that the would-be intervenor's motion "failed to satisfy the Fifth

---

[8] Defendant's Response, ¶ 1.

Circuit requirement that there be an existing suit in which to intervene." Id. (citing Non Commissioned Officers Ass'n, 637 F.2d at 373).

The Court begins its analysis with case law discussing the timeliness factor. In Edwards v. City of Houston, 78 F.3d 983 (5th Cir. 1996), the Fifth Circuit noted that a motion to intervene "filed prior to entry of judgment favors timeliness, as most of our case law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation," id. at 1001 (citations omitted); however, the court also pointed out that "[t]here are no absolute measures of timeliness," and that "[t]imeliness is to be determined from all the circumstances." Id. at 1000 (citations and internal quotation marks omitted). The Stallworth factors

> are a framework and "not a formula for determining timeliness." Edwards, 78 F.3d at 1004. A motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness. Stallworth, 558 F.2d at 267.

John Doe v. Glickman, 256 F.3d 371, 376 (5th Cir. 2001).

In Ford v. City of Huntsville, 242 F.3d 235 (5th Cir. 2001), the Fifth Circuit decided that a newspaper could intervene to challenge a confidentiality agreement between settling parties. The court noted that the newspaper's "interest in the case is limited to obtaining access to the settlement documents." Id. at 239. The district court had entered an Agreed Order of Dismissal

in the underlying action on December 27, 1999, and an Agreed Order of Confidentiality on December 28, 1999. The newspaper's motion to intervene was filed on January 19, 2000. <u>Id</u>. at 238. The Fifth Circuit reversed the district court's denial of the motion to intervene seeking access to the settlement documents, finding:

> Appellant had no reason to think that such access would be denied until the confidentiality agreement was proposed. Therefore, appellant's interest in the case did not arise until appellees filed their joint motion for the confidentiality agreement. As a result, there were only twenty-three days between the time when appellant could have learned of its interest in the case and the time at which it filed its motion to intervene.

<u>Id</u>. at 239.

The circuit court then proceeded to the second timeliness factor (the determination of prejudice to existing parties resulting from the movant's failure to seek intervention at an earlier time), and in the context of the case before it related the second factor to the first (the examination of how much time had lapsed between the movant receiving knowledge of its interest in the litigation and the filing of the motion to intervene):

> ... [T]his court has emphasized that the relevant prejudice is that created by the intervenor's delay in seeking to intervene after it learns of its interest, not prejudice to existing parties if intervention is allowed. <u>Ceres Gulf v. Cooper</u>, 957 F.2d 1199, 1203 (5th Cir. 1992). No apparent prejudice to the original parties resulted from appellant filing its motion in January as opposed to December, and no such prejudice was alleged. <u>In addition, because appellant seeks only to litigate the issue of the confidentiality order and not to reopen the merits of the dispute between the original parties, even a greater delay in the intervention would not have prejudiced the parties</u>. See <u>Pansy v. Borough of</u>

7

Stroudsburg, 23 F.3d 772, 780 (3rd Cri. 1994).

Id. at 240 (emphasis added).

Like the intervenor in Ford, the movants in this case seek to challenge the confidentiality of the settlement agreement, not to litigate the merits of the underlying lawsuit. In light of Ford, it would seem that the nature of the interest asserted by a would-be intervenor has some bearing on the timeliness requirement. The Court therefore turns its attention to the second requirement of 24(a)(2), i.e. "the applicant must have an interest relating to the property or transaction which is the subject of the action." Taylor Communications, 172 F.3d at 387.

It is not necessary that "the interest has to be of a legal nature identical to that of the claims asserted in the main action," Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1124 (5th Cir. 1970); however, "intervention [of right] still requires a 'direct, substantial, legally protectable interest in the proceedings.'" Id.

> By requiring that the applicant's interest be not only "direct" and "substantial," but also "legally protectable," it is plain that something more than an economic interest is necessary. What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant. This is reflected by the requirement that the claim the applicant seeks intervention in order to assert be a claim as to which the applicant is the real party in interest. The real party in interest requirement of Rule 17(a), Fed.R.Civ.P., "applies to intervenors as well as plaintiffs," as does also the rule that "a party has no standing to assert a right if it is not his own." United States v. 936.71 Acres of Land, 418 F.2d 551, 556 (5th

8

Cir. 1969).

New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 464 (5th Cir. 1984)(emphasis in original)(footnote and further citation omitted).

In addition, where the claims in the main action have been dismissed, whether by decision on the merits or settlement, nonparties seeking intervention must show that they have standing under Article III of the United States Constitution in order to intervene. Newby v. Enron Corp., 443 F.3d 416, 422 (5th Cir. 2006); Fulbright & Jaworski, LLP v. Mariner Health Care, Inc., 2006 WL 3447688 *4 (W.D. Tex. Nov. 2, 2006). Standing is not required, however, if the nonparties seek intervention in a pending case and "the ultimate relief sought by [them] is also being sought by at least one subsisting party with standing to do so." Newby, 443 F.3d at 422 (quoting Ruiz v. Estelle, 161 F.3d 814, 830 (5th Cir. 1998)); Fulbright, 2006 WL 3447688 at *4.

In this instance, there is no longer a pending case in which the movants seek to intervene; therefore, the movants must have standing in order to intervene. Because standing is a jurisdictional issue, it must be addressed before the Court can proceed with its intervention analysis. See San Juan County v. United States, 420 F.3d 1197, 1205 (10th Cir. 2005)("because standing implicates a court's jurisdiction, it requires the court itself to raise and address standing before reaching the merits of

9

the case before it")(citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180 (2000)); Fund For Animals, Inc. v. Norton, 322 F.3d 728, 732 (D.C. Cir. 2003)(addressing standing prior to Rule 24(a)(2) factors because standing presents a jurisdictional question).

Article III standing principles are meant to be a limitation on the "role of the courts in our democratic society." Allen v. Wright, 468 U.S. 737, 750 (1984)(quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). Article III limits the power of the federal courts to deciding "cases" and "controversies." Diamond v. Charles, 476 U.S. 54, 61 (1986). "Standing to sue or defend is an aspect of the case-or-controversy requirement." Arizonans for Official English v. Arizona, 520 U.S. 43, 64 (1997). In order to have standing, a person must be able to show an invasion of a "legally protected interest" that is "concrete and particularized and actual or imminent." Id. "An interest shared generally with the public at large in the proper application of the Constitution and laws will not do." Id.

Thus, "[b]oth standing and intervention require that a party have an interest in the subject matter of the litigation." San Juan County, 420 F.3d at 1203. Rule 24(a)(2)'s second requirement is "an interest relating to the property or transaction which is the subject of the action," and the applicant must be "so situated that the disposition of the action may as a practical matter impair

or impede the applicant's ability to protect that interest ...." Fed.R.Civ.P. 24(a)(2).

The Fifth Circuit has held that a news agency has a legal interest in challenging a confidentiality order. Ford, 242 F.3d at 240 (citing Davis v. East Baton Rouge Parish School Board, 78 F.3d 920, 926 (5th Cir. 1996)("members of the news media, although not parties to litigation, can appeal court closure orders or confidentiality orders under the collateral order doctrine")).

> The Third Circuit has explained that "in determining whether the Newspapers have standing, we need not determine that the Newspapers will ultimately obtain access to the sought-after Settlement Agreement. We need only find that the Order of Confidentiality being challenged presents an obstacle to the Newspapers' attempt to obtain access."

Ford, 242 F.3d at 240 (quoting Pansy, 23 F.3d at 777).

In this case, as in Ford, the movants are members of the news media seeking access to a sealed settlement agreement. The order sealing the settlement agreement presents an obstacle to the movants' attempt to obtain access to it. To establish standing, the movants "must show an injury in fact that is fairly traceable to the challenged act and that is likely to be redressed by the requested remedy." Davis, 78 F.3d at 926 (citations omitted). "Several courts have held that news agencies have standing to challenge confidentiality orders in an effort to obtain information or access to judicial proceedings, although they are neither parties to the litigation nor restrained directly by the orders."

11

Id. (citing Pansy, 23 F.3d at 777; In re Application of Dow Jones & Co., 842 F.2d 603, 608 (2nd Cir. 1988); Journal Publishing Co. v. Mechem, 801 F.2d 1233, 1235 (10th Cir. 1986); Radio & Television News Ass'n v. United States Dist. Court, 781 F.2d 1443, 1445 (9th Cir. 1986); United States v. Gurney, 558 F.2d 1202, 1206 (5th Cir. 1977); CBS, Inc. v. Young, 522 F.2d 234, 238 (6th Cir. 1975)).

The news media movants must demonstrate an injury in fact. Id. The First Amendment provides "at least some protection for the [movants'] efforts to gather the news." Id. (citing Branzburg v. Hayes, 408 U.S. 665, 681 (1972); Gurney, 558 F.2d at 1208; CBS, Inc., 522 F.2d at 238). "In addition, the First Amendment protects the [movants'] right to receive protected speech." Id. In Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748 (1976), quoted by the Fifth Circuit in Davis, the Supreme Court held:

> "[W]here a speaker exists ... the protection afforded is to the communication, to its source and to its recipients both ... [W]e acknowledg[e] that this Court has referred to a First Amendment right 'to receive information and ideas,' and that freedom of speech 'necessarily protects the right to receive.'"

Id. at 756-57. In Davis, the School Board argued "that the First Amendment right to receive speech only comes into existence once a willing speaker has been shown to exist." Davis, 78 F.3d at 926 (citing Virginia State Bd. of Pharmacy, 425 U.S. at 756 ("Freedom of speech presupposes a willing speaker.")). The news agencies in Davis responded that, "even absent a willing speaker, they would

have standing by virtue of their independent First Amendment right to gather the news." Id. at 926-27. The Fifth Circuit found that a willing speaker existed since the parties had "stipulated that members and employees of the Board were willing speakers on [the school desegregation] issue prior to the district court's original confidentiality order." Id. at 927. Thus, the appellate court did not reach the issue of "whether, in every case, the media must demonstrate the existence of a willing speaker to establish standing to challenge a court's confidentiality order." Id.

In this case, the movants do not allege that a willing speaker exists. Nevertheless, there is substantial authority recognizing a public right of access, under the common law or the First Amendment, to judicial documents in the absence of a willing speaker. See Ashcraft v. Conoco, Inc., 218 F.3d 288, 302-03 (4th Cir. 2000)(finding it unnecessary to conclude whether the press enjoys any "special right of access" to sealed material greater than that a private citizen would enjoy); Rosenfeld v. Montgomery County Public Schools, 25 Fed.Appx. 123, 2001 WL 1658893 *132 (4th Cir. Dec. 27, 2001)(finding that the First Amendment right of access provides a stronger presumption in favor of access than the common-law right). The Court finds that if the Fifth Circuit were presented with the issue in this case, it would find that the movants are not required to find a willing speaker to establish standing to challenge the sealing of the settlement agreement. The

13

Court therefore finds that the movants have the requisite standing. The action they complain of, the sealing of the settlement agreement, presents an obstacle to their attempt to obtain access, and has caused injury to a "legally protected interest" that is "concrete and particularized and actual or imminent." See Arizonans for Official English, 520 U.S. at 64.

The Court further finds that since the movants have standing, they also meet the "interest" requirement of Rule 24(a)(2), i.e. they can demonstrate that they "have an interest relating to the property or transaction which is the subject of the action." In John Doe #1 v. Glickman, 256 F.3d 371 (5th Cir. 2001), the Fifth Circuit explained:

> A potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene, if the potential intervener has a "direct, substantial, [and] legally protectable" interest in the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene.

Id. at 379 (citations omitted). In In the Matter of Lease Oil Antitrust Litigation, 570 F.3d 244, 251 (5th Cir. 2009), the Fifth Circuit found that the interest need not be "directly related to the underlying dispute," as long as it is "sufficiently related to the litigation." The court also found that "[a]n interest solely related to the terms of a settlement can support intervention." Id., citing Ford, 242 F.3d at 239-241. In Ford, the Fifth Circuit found that since the underlying lawsuit had already been dismissed,

14

the newspaper could demonstrate the interest required to intervene under Rule 24(a)(2) by showing that it had standing to challenge the district court's confidentiality order. Ford, 242 F.3d at 240, citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 777 (3rd Cir. 1992).

In light of the movants' interest and the purpose of their proposed intervention, the Court resumes its discussion of the timeliness factors. In this case, the movants waited approximately 15 months to seek leave to intervene, much longer than the 23 day delay in Ford; however, in Ford the Fifth Circuit pointed out that "even a greater delay" would not have prejudiced the parties. 242 F.3d at 240. In San Jose Mercury News, Inc. v. U.S. District Court, 187 F.3d 1096 (9th Cir. 1999), the Ninth Circuit noted that "delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records." Id. at 1101, citing Beckman Indus. v. International Ins. Co., 966 F.2d 470, 471 (9th Cir. 1995)(affirming intervention 2 years after settlement); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 785 (1st Cir. 1988)(collecting cases). The Court finds that the parties in this action have not shown that they have been prejudiced by the movants' delay in filing their motion to intervene. The Court does find, however, that the movants would be prejudiced if they are not allowed to intervene. Finally, the Court finds that there are no unusual circumstances weighing for or

15

against intervention. On balance, the Court finds that the movants' motion to intervene is timely.

The Court has already determined that the movant's meet the requisite "interest" standard of the second Rule 24(a)(2) requirement. The third requirement for intervention of right is that the movants are so situated that the disposition of the case may impair their ability to protect their interests. The order the movants wish to challenge conflicts with the right of public access which they wish to assert; therefore, this requirement is met. See Ford, 242 F.3d at 240. Finally, the last condition for intervention of right requires that the interests of the movants are inadequately represented by the existing parties. As the Fifth Circuit found in Ford, "[t]he original parties in this case jointly moved for the confidentiality order, advocating a position contrary to the interest of appellant." 242 F.3d at 241. This element is clearly met.

The Court therefore finds that the movants' motion is well taken and they shall be allowed to intervene for the limited purpose of challenging the order sealing certain court documents. Accordingly,

IT IS HEREBY ORDERED that the motion to intervene of Jackson New Media, Inc., joined in by WDAM, LLC; WLBT, LLC; and WLOX, LLC is GRANTED;

FURTHER ORDERED that the movants shall have thirty (30) days

to file an appropriate motion and memorandum.

SO ORDERED, this the 24th day of March, 2010.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE