```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                   HATTIESBURG DIVISION


STATE FARM FIRE AND CASUALTY
COMPANY and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY                         PLAINTIFFS

VS.                      CIVIL ACTION NO. 2:07-cv-188(DCB)(MTP)

JIM HOOD, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL
OF THE STATE OF MISSISSIPPI                           DEFENDANT

JACKSON NEW MEDIA, INC.; WLBT, LLC;
WDAM, LLC; and WLOX, LLC                             INTERVENORS
```

MEMORANDUM OPINION AND ORDER

This cause is before the Court on Jackson New Media, Inc.; WLBT, LLC; WDAM, LLC; and WLOX, LLC's ("the intervenors") motion for partial relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), or, in the alternative, for an order unsealing the settlement agreement in this case **(docket entries 119, 120)**. Having carefully considered the motion, the responses of the plaintiffs and defendant, and memoranda of the parties, and being fully advised in the premises, the Court finds as follows:

This matter is properly before the Court, the intervening parties having been granted permission to seek partial relief from this Court's February 7, 2008, Judgment of Dismissal, dismissing this action "based on a confidential settlement agreement between the parties, which shall remain under seal." Judgment of Dismissal, p. 1. As entities whose rights are directly affected by the final judgment, the intervenors are parties with standing under

Rule 60(b). Rule 60(b)(6) serves as a "catch-all provision, conferring on the court broad discretion to relieve a party from final judgment upon such terms as are just." Spacey v. Burgar, 207 F.Supp.2d 1037, 1048 (E.D. Cal. 2001)(citations and internal quotations omitted).

On September 13, 2007, State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company (collectively "State Farm") filed suit in this court against Jim Hood, Attorney General of the State of Mississippi, alleging that the Attorney General violated the terms of a January 23, 2007 Non-Prosecution Agreement by filing a Fourth Grand Jury Subpoena concerning State Farm's handling of Hurricane Katrina claims. State Farm initially sought to have the record in this case sealed, so as not to violate the secrecy of any grand jury proceedings, until such time as the attorney general could be heard on the issue. The record was initially sealed; however, State Farm subsequently moved to unseal the record and the attorney general opposed the motion, arguing that portions of the record should remain sealed. The Court ordered the record unsealed, finding nothing "filed in the record thus far that would reveal the specifics of any grand jury proceedings." Order of Magistrate Judge Michael T. Parker, 11/2/07, p. 2. The Court's ruling was "without prejudice to the parties' rights to request that the court seal any future filings in this case upon a showing of good cause." Order, p. 3.

On February 6, 2008, the parties announced to the Court that a settlement had been reached in this case, one of the terms of settlement being that the parties' agreement would remain under seal, and that the parties would mutually maintain confidentiality concerning the settlement terms.  The parties further agreed that either party could move to have the agreement unsealed should the other breach the terms of settlement, and that the Court would retain jurisdiction to enforce the terms of the settlement agreement.  The parties dictated their agreement into the record on February 6-7, 2008.

Once a settlement agreement is filed with the court, it becomes part of the "judicial record," to which the public has a common law right of access.  S.E.C. v. Waeyenberghe, 990 F.2d 845, 849 (5th Cir. 1993).  The public's right of access is not absolute, however.  It creates only a "presumption" of access, which can be overcome by a strong showing of the need for confidentiality.  Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-98.  The Court must undertake a balancing of factors on both sides of the issue (the need for confidentiality and the common law presumption of access), the relevant factors depending on the facts of the particular case.  Id. at 598, 602.[1]

---

[1] "It is difficult to distill from the relatively few judicial decisions a comprehensive definition of what is referred to as a common-law right of access or to identify all the factors to be weighed in determining whether access is appropriate.  The few cases that have recognized such a right do agree that the

"Public policy requires the courts to encourage the voluntary settlement of civil controversies." Burlington Industries v. Exxon Corp., 65 F.R.D. 26, 45 (D. Md. 1974); see also Ramirez v. General Motors Corp., 1999 WL 1336087, *2 (S.D. Tex. Dec. 10, 1999)("There is little question that courts have strong interests in encouraging the expeditious settlement of private disputes."). In this case, the parties bargained for confidentiality, which was of paramount importance, and they expressly provided for the Court's continuing jurisdiction to enforce confidentiality as one of the terms of settlement. As the district court observed in General Steel Domestic Sales, LLC v. Steel Wise, LLC, 2009 WL 185614 (D. Colo. Jan. 23, 2009):

> In the context of settlement agreements, confidentiality may be of paramount concern to the parties, especially where one side fears that the publicity of a settlement might encourage further litigation. Subjecting a settlement to terms of confidentiality can play an important role in allaying those concerns, thereby facilitating settlement and avoiding protracted litigation.

Id. at *7.

In Minneapolis Star & Tribune Co. v. Schumacher, 392 N.W.2d 197 (1986), the Supreme Court of Minnesota, applying the Nixon balancing test to determine whether a settlement agreement should be disclosed, stated:

---

decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon, 435 U.S. at 598-99.

> The philosophical reasoning behind allowing private settlements also leads to the conclusion that such agreements should remain private. This court has often stated that it favors the settlement of disputed claims without litigation. ... To allow public access to settlement documents filed with a court may circumvent this policy. One of the reasons parties agree to settle is that they do not wish to go to trial and expose their disputes to the public. This fact was raised by the appellants in this case. It would therefore be inconsistent with our public policy encouraging settlement to allow the settlement documents in this case to be made public. Such reasoning would tend to discourage settlements rather than encouraging them.

Id. at 205 (citations omitted).

On the other side of the balancing test, the Third Circuit Court of Appeals has held:

> A factor which a court should consider in conducting the good cause balancing test is whether a party benefitting from the order of confidentiality is a public entity or official. Similarly, the district court should consider whether the case involves issues important to the public. If a settlement agreement involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality. See, e.g., FTC v. Standard Fin. Management Corp., 830 F.2d 404, 412 (1st Cir. 1987)(threshold for sealing is elevated because the case involves a government agency and matters of public concern). On the other hand, if a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.

Pansy v. Borough of Stroudsburg, 23 F.3d 772, 788 (3rd Cir. 1994)(footnote omitted).

The case sub judice involves both a public official and a matter of public concern, factors which bring this case in line with Marcus v. St. Tammany Parish School Board, 1997 WL 313418

(E.D. La. June 9, 1997). In that case, the district court first looked at the prejudice the Times-Picayune would face if its motion to intervene were denied: "If denied, the Times-Picayune will be unable to report on and publish the terms of the settlement agreement concerning St. Tammany School Board and its employees, a topic of public interest concerning the conduct of public officials. This factor weighs in favor of intervention." Id. at *4. Having granted the motion to intervene, the court then balanced the parties' agreement to keep the settlement confidential and sealed against the public's common law right of access:

> In Bank of America Nat. Trust & Saving Ass'n v. Hotel Rittenhouse, 800 F.2d 339, 345 (3rd Cir. 1986), the Third Circuit commented that "we cannot permit the expediency of the moment to overturn centuries of tradition of open access to court documents and orders." Id. "District courts should not rely on the general interest in encouraging settlement, and should require a particularized showing of the need for confidentiality in reaching a settlement." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 788 (3rd Cir. 1994). Even when presented with a particularized need for confidentiality, such an interest should only be one factor in the district court's determination. Id.
>
> "The public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official." Id. at 784. If a settlement agreement involves public officials or parties of a public nature, such a factor weighs against entering or maintaining an order of confidentiality. Id. at 788.
>
> Here, the transcript of the October 18, 1996 proceeding is a judicial record, filed and submitted in district court which involves a public official and entity. The Court finds that Bankston's [the public official] reasons for keeping the transcript confidential, the parties['] reliance on the transcript's confidentiality and the

>   preservation of the transcript have been rejected by the
>   courts in <u>Pansy</u> and <u>Rittenhouse</u> because they do not
>   satisfy the standard of a particularized showing of a
>   need for confidentiality.  Accordingly, as the Court
>   finds the reasoning in <u>Pansy</u> and <u>Rittenhouse</u> persuasive,
>   the Court finds that the Times-Picayune is entitled to
>   the transcript of the October 18, 1996, proceeding.

<u>Id</u>. at *5.

Like the parties in <u>Marcus</u>, the parties in this case have failed to make a particularized showing of a need of confidentiality.  Attorney General Hood states that lifting the seal would have the effect of "potentially opening the door for one or both parties to challenge the validity of the entire settlement agreement. ... potentially rendering void the remainder of the agreement."  Defendant's Response, ¶ 7.  The Court finds, however, that the provisions of the settlement agreement prohibit the <u>parties</u> from making disclosures.  A Court-ordered unsealing of the agreement does not void any crucial terms of the settlement, and the parties have failed to show how unsealing the agreement could significantly harm either the plaintiffs or the defendant.  <u>See</u> <u>Boone v. City of Suffolk, Virginia</u>, 79 F.Supp.2d 603, 609-10 (E.D. Va. 1999); <u>Keemar v. AVCO Corp.</u>, 2007 WL 2696571, *2 (M.D. Fla. Sept. 11, 2007).  Under these circumstances, a generalized interest in encouraging settlements does not outweigh the public's common law right of access.  The Court shall therefore unseal the transcript of the February 6-7, 2008, settlement agreement.

The intervenors also seek a transcript of an evidentiary

hearing held on November 7, 2007, consisting of an *in camera* examination of Courtney Schloemer, a staff attorney with the Attorney General's office. Attorney General Hood argues that Ms. Schloemer's testimony is protected by both the attorney-client privilege and the work product doctrine. It is this Court's duty to weigh the common law right of public access against the interests of the Attorney General's office in maintaining its privileges, and to determine whether to unseal the record or keep it (or parts of it) out of the public domain.

It is not entirely clear to the Court what the Attorney General's position on this matter might be in light of the Court's unsealing of the settlement agreement. In his response, Attorney General Hood states:

> In the alternative, and without waiver of the foregoing position, should the Court be inclined to lift the seal as to any of the undisclosed records, the Attorney General would strongly urge the Court to remove the seal in its entirety, allowing complete public disclosure of both the settlement agreement and the *in camera* testimony. If, as the Intervenors suggest, there is an overriding interest in allowing the public to know what happened in this case, then that interest may only be fulfilled by allowing access to all of the records in this case.

Defendant's Response, ¶ 8. Rather than presume how the defendant wishes to proceed regarding the *in camera* testimony, the Court shall require the defendant to clarify his position. If he intends to assert the privileges, it will be necessary for him to obtain a transcript of the *in camera* hearing, and to present his written

arguments in camera, specifically addressing each portion of the testimony he seeks to have withheld, keeping in mind that the burden of justifying nondisclosure of specific information is on the party seeking to withhold that information.  The burden cannot be shifted to the courts by sweeping, generalized claims of exemption.

Finally, the intervenors seek "the public release of the transcript and/or video of the deposition of Richard F. 'Dickie' Scruggs that was apparently placed under seal."  Motion of Intervenors For Partial Relief From Judgment, ¶ 3.  The Court did not receive the deposition into evidence, and the deposition does not otherwise appear of record.  "The common-law right of access to judicial proceedings does not extend to information collected through discovery which is not a matter of public record." Gilliam v. HBE Corporation, 2000 WL 33996253, *3 (M.D. Fla. Oct. 25, 2000)(citing In re Alexander Grant & Co. Litigation, 820 F.2d 352, 355 (11th Cir. 1987)).  Furthermore, the Court can neither seal nor unseal what it does not have.  See DeKalb Genetics Corp. v. Mycogen Plant Science, Inc., 2002 WL 31718615, *1 (N.D. Ill. Dec. 2, 2002).  This portion of the motion is therefore denied.  Accordingly,

IT IS HEREBY ORDERED that the intervenors' motion for partial relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6), or, in the alternative, for an order unsealing the settlement agreement in this case **(docket entries 119, 120)** is

GRANTED IN PART AND DENIED IN PART as follows:

GRANTED as to the motion to unseal the transcript of the settlement agreement in this case, docket entry 109, and the clerk of court is directed to unseal docket entry 109;

DENIED as to the motion regarding the deposition of Richard F. 'Dickie' Scruggs;

As for the in camera examination of Courtney Schloemer, the defendant is granted five (5) days from the date of entry of this Memorandum Opinion and Order to clarify his position on this issue. If he is no longer asserting the privileges, the Court shall unseal the in camera testimony and exhibits.  Should the defendant wish to assert the privileges, the Court will enter an Order granting him thirty (30) days to obtain a transcript of the examination, and to present to the Court, in camera, a copy of the transcript together with a brief setting forth the factual and legal basis for each privilege claimed with reference to specific lines of the transcript.

SO ORDERED, this the 2nd day of September, 2010.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE